857 So.2d 904 (2003)
CRESCENT MIAMI CENTER, LLC, Appellant,
v.
DEPARTMENT OF REVENUE, STATE OF FLORIDA, Appellee.
No. 3D02-3002.
District Court of Appeal of Florida, Third District.
September 10, 2003.
*905 Berger Singerman, and Fred O. Goldberg, for appellant.
Fowler White Boggs Banker, and Mitchell I. Horowitz, and Tracy R. Gunn (Tampa), Amicus for National Association of Office and Industrial Parks of Florida, Inc., for appellant.
Charles J. Crist, Jr., Attorney General, and Charles Catanzaro, Assistant Attorney General (Tallahassee), for appellee.
Before LEVY, GERSTEN, and GREEN[*], JJ.
GERSTEN, J.
Crescent Miami Center, LLC ("CMC"), appeals a final order entering summary judgment in favor of the Department of Revenue ("DOR"). We affirm based upon our determination that the transfer of real property from a parent company to a newly created subsidiary limited liability company owned by the general limited partner of the parent company, is subject to Florida's documentary stamp tax statute, Section 201.02(1), Florida Statutes (2000).
The real property at issue was owned by Crescent Real Estate Equities Limited Partnership ("Crescent"). On February 24, 2000, Crescent formed appellant CMC. Immediately after its formation, Crescent transferred 99.9% of its ownership interest in CMC to Crescent Real Estate Funding IX, L.P. ("Crescent Funding").[1] Crescent transferred the remaining 0.1% to CRE Management IX, L.L.C. ("CRE").[2]
*906 Immediately thereafter, and again on February 24th, CRE transferred its 0.1% interest in appellant CMC to Crescent Funding. On February 25, 2000, Crescent transferred the real property to CMC. The deed conveying the property states appellant CMC paid $10.00 and "good and valuable consideration" for the property. According to CMC, the sole purpose for the transfer was to separate the property from Crescent's other assets in order to facilitate future unsecured financing. CMC recorded the deed and paid $1,212,750 in documentary stamp tax. The tax is comprised of $693,000 in state documentary stamp tax pursuant to Section 201.02(1), and $519,750 in Dade County documentary surtax pursuant to Section 201.031(1).[3]
The chart below shows the relationship of the various parties and the property transfer:

Thereafter, appellant CMC applied for refund of the documentary stamp tax and surtax. The DOR denied the application, and CMC filed suit challenging the refund denial. Both parties moved for summary judgment. Final summary judgment was entered in favor of the DOR. CMC appealed the adverse summary judgment, and an agreed motion to allow the National Association of Office and Industrial Parks of Florida, Inc. ("NAOIP") to file an amicus brief was subsequently granted by this Court.
The documentary stamp tax applies to instruments conveying an interest in Florida real property to a "purchaser" and provides:
On deeds, instruments, or writings whereby any lands, tenements, or other real property, or any interest therein, shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, *907 the purchaser or any other person by his or her direction, on each $100 of the consideration therefor the tax shall be 70 cents. When the full amount of the consideration for the execution, assignment, transfer, or conveyance is not shown in the face of such deed, instrument, document, or writing, the tax shall be at the rate of 70 cents for each $100 or fractional part thereof of the consideration therefor. For purposes of this section, consideration includes, but is not limited to, the money paid or agreed to be paid; the discharge of an obligation; and the amount of any mortgage, purchase money mortgage lien, or other encumbrance, whether or not the underlying indebtedness is assumed. If the consideration paid or given in exchange for real property or any interest therein includes property other than money, it is presumed that the consideration is equal to the fair market value of the real property or interest therein.
See § 201.02(1), Fla. Stat. (2000).
CMC contends that the tax cannot be imposed in the present case because CMC was not a "purchaser" of the real property, within the meaning of Section 201.02(1). On the other hand, the DOR asserts that the deed tax applies based upon the plain language of the statute, a subsequent amendment, and existing case law.
In 1956, the Florida Supreme Court held that grantee shareholders who had been transferred unencumbered property from a corporation, were not "purchasers" because the transfer was a "mere book transaction." State ex rel. Palmer-Florida Corp. v. Green, 88 So.2d 493 (Fla. 1956). The grantees were not purchasers because they did not pay a "reasonably determinable, consideration for the conveyance as contemplated by Sec. 201.02."
Thereafter, in 1976, the Court defined a "purchaser" for purposes of the deed tax as "one who obtains or acquires property by paying an equivalent in money or other exchange in value." See Florida Dep't of Revenue v. De Maria, 338 So.2d 838, 840 (Fla.1976). In De Maria, the Court found there was no purchaser and no taxable exchange in the transfer of a corporation's equity in real property to its sole shareholder. However, the shareholder was considered a "purchaser" of the real property to the extent of the mortgage. Significantly, both Palmer-Florida and De Maria were decided under the prior language of Section 201.02(1). Applying the prior language, there was no reasonably determinable consideration, and thus no purchaser could be found. See also De Vore v. Gay, 39 So.2d 796 (Fla.1949)(consideration for deed tax purposes must have a reasonable and determinable value).
In 1990, Section 201.02(1) was amended and a statutory definition for "consideration" was added. The amended statute specifies four types of exchange mediums which constitute consideration: (1) the payment of monies; (2) the discharge of any obligation; (3) a mortgage on property whether discharged or not; and (4) the fair market value of the property exchanged. See Ch. 90-132, § 7, Laws of Fla.
The 1990 amendment also created a statutory presumption that non-monetary consideration for property is presumed to be equivalent to the fair market value for property exchanged. Thus consideration can now be reasonably determined by reference to the value of the property deeded, rather than by referencing the value of the property exchanged. In response to the 1990 statutory amendments, the DOR amended its rules to require the payment of stamp tax on property conveyances between shareholders and their respective corporations, see Fla. Admin. Code Rules 12B-4.013(7)-(8), and between partners *908 and their respective partnerships, see Fla. Admin. Code Rules 12B-4.013(10).[4]
In 1998, the Second District applied the amended statute and found that a transfer from two equal shareholders to a corporation was not subject to the deed tax because there was no purchaser. See Kuro, Inc. v. State, Dep't of Revenue, 713 So.2d 1021 (Fla. 2d DCA 1998). In Kuro, a father and son purchased condominium units, formed a corporation for the purpose of taking title to the units, and thereafter transferred title to the corporation for the purpose of avoiding exposure to potential personal liability. The Second District held the conveyances were book transactions, not sales to a purchaser, because the father and son "received nothing from the corporation that they did not already have." Kuro, Inc. v. State, Dep't of Revenue, 713 So.2d at 1023. A concurring opinion in Kuro concluded "there was no purchaser because there was no consideration" and thus in the absence of either a purchaser or consideration, the deed tax did not apply. Kuro, Inc. v. State, Dep't of Revenue, 713 So.2d at 1023 n. 1 (Judge Doyel, concurring). Two years later, the First District held that a non-proportionate transfer of unencumbered real property into a partnership was subject to the deed tax. See Muben-Lamar, L.P. v. Dep't of Revenue, 763 So.2d 1209 (Fla. 1st DCA 2000). Two of three partners controlled 99% of the taxpayer partnership and transferred property as an initial capital contribution. The remaining 1% partner did not possess any interest in the real property prior to the transaction. The First District rejected the taxpayer partnership's argument that it was not a purchaser, and noted the partnership was an entity separate and distinct from its partners.
The court held: "[Muben, Lamar, LP] bought the real property by issuing valuable partnership interests in consideration for land. This case involved a straightforward exchange of land for personalty." Muben-Lamar, L.P. v. Dep't of Revenue, 763 So.2d at 1210. The majority certified express and direct conflict with Kuro. The Florida Supreme Court initially granted certiorari, but later dismissed the appeal stating "jurisdiction was improvidently granted." Muben-Lamar, L.P. v. Dep't of Revenue, 789 So.2d 337 (Fla.2001).
This Court has not yet applied the amended Section 201.02(1). Reviewing the decisions from our sister district courts, we recognize the need for consistency in tax consequences and for a clear judicial directive interpreting the statutory language of the deed tax. Keeping these principles in mind, we have carefully reviewed the parties' positions.
CMC makes a superficially convincing and simple argument that no tax is due under Section 201.02(1), contending the real property transfer was just a "book transaction." According to CMC, beneficial ownership of the real estate did not change, since Crescent owns Crescent Funding, and Crescent Funding owns CMC. It concludes that because of the structure of the transaction, CMC, as grantee, cannot be considered a "purchaser" within the purview of Section 201.02(1), *909 and thus the trial court erred in denying its tax refund claim. We disagree.
Applying the plain language of Section 201.02(1) to the undisputed facts and the face of the deed, we find the deed conveying the real property from the limited partnership to the limited liability company is subject to the documentary stamp tax. First, as pointed out by the DOR, the documentary stamp tax is an excise tax on documentsnot a tax on transactions. See Hialeah, Inc. v. Dep't of Revenue, 380 So.2d 562 (Fla. 3d DCA 1980); Dep't of Revenue v. McCoy Motel, Inc., 302 So.2d 440 (Fla. 1st DCA 1974). As an excise tax, the documentary stamp tax is imposed on the document itself, and is measured by the particular instrument and conveyance involved. See Dep't of Revenue v. Citizens Nat'l Bank, 618 So.2d 252 (Fla. 5th DCA 1993)("[t]he tax is on the document itself and not on the transaction contemplated by the document"). Liability for the tax "is to be solely determined by the form and face of the instrument and not by proof of extrinsic facts." State Dep't of Revenue v. McCoy Motel, Inc., 302 So.2d at 442.
Here, the deed from Crescent to CMC conveyed the real property "in fee simple forever." A title in fee simple implies absolute dominion over land and is "the highest quality of estate in land known to law." See State v. Jacksonville Expressway Auth., 139 So.2d 135 (Fla. 1962). Crescent owned the real property on February 24th. On February 25th, CMC owned the real property, after Crescent executed a deed in consideration of $10.00 and "other good and valuable consideration." On February 25th, after the deed was executed, Crescent had no interest in the property to convey.
Second, the face of the deed reflects a substantive change of ownership in exchange for consideration. Consideration follows as a natural consequence of the commercial transaction transferring intangible property with exchangeable value, as evidenced by the "other good and valuable consideration" recitation on the deed. Section 201.02(1) does not limit consideration to money, stock, or debt relief.
The amended Section 201.02(1) provides that "[i]f the consideration paid or given in exchange for real property, or any interest therein includes property other than money, it is presumed that the consideration is equal to the fair market value of the real property." The consideration in the present case is thus reasonably determined by reference to the property deeded.
The deed effectuated a complete change in both the legal title and the beneficial ownership of the property, whereby Crescent surrendered 100% of its equitable ownership in land in consideration for an increased value in its interest in Crescent Funding. See Dean v. Pinder, 312 Md. 154, 538 A.2d 1184 (1988)(consideration for transfer of real property to corporation was found in increase in assets of corporation); see also Carpenter v. White, 80 F.2d 145 (1st Cir.1935)(conveyance made by trustees of a business trust to a new trust formed as a part of a consolidation in return for shares issued by the trust was held subject to the federal documentary stamp tax; equitable interests of the new shares in the same property were not the same as those of the old shares).[5]
*910 The value of the consideration is the deeded property's fair market value, which is the amount Crescent's equity interest in Crescent Funding increased, as a result of Crescent's deeding the property to CMC. In short, Crescent exchanged equitable ownership of land in consideration for a more valuable equitable ownership of an interest in another limited partnership. See Mangus v. Present, 135 So.2d 417 (Fla.1961)(consideration exists where there is benefit to the promisor or detriment to the promisee); Dorman v. Publix-Saenger-Sparks Theatres, Inc., 135 Fla. 284, 184 So. 886 (1938)(same).[6]
As noted by the Florida Supreme Court, there is a "purchaser" whenever there is "consideration"; likewise, there is "consideration" whenever there is a "purchaser." See Florida Dep't of Revenue v. De Maria, 338 So.2d at 840. We find that CMC does meet the statutory requirements as a "purchaser" and thus cannot escape application of the tax on this basis.
Finally, we decline CMC's invitation to create a judicial exemption from documentary stamp taxes where real property is conveyed between artificial legal entities under these circumstances. Such is the province of the legislature, not the judiciary.
Exemptions from tax are to be strictly construed against the taxpayer. See Dep't of Revenue v. Anderson, 403 So.2d 397 (Fla.1981); Regal Kitchens Inc. v. Florida Dep't of Revenue, 641 So.2d 158 (Fla. 1st DCA 1994). Moreover, under the principle of statutory construction "expressio unius est exclusio alterius," the express mention of one exemption implies the exclusion of others. See Young v. Progressive Southeastern Ins. Co., 753 So.2d 80 (Fla. 2000). Thus where a statute expressly references exemptions and specifies the situations where those exemptions apply, "an inference must be drawn that what is not included by specific reference was intended to be omitted or excluded." See Prewitt Mgmt. Corp. v. Nikolits, 795 So.2d 1001 (Fla. 4th DCA 2001); see also Florida Dep't of Revenue v. Florida Mun. Power Agency, 789 So.2d 320 (Fla.2001)(language used by legislature determines the meaning of the statute).
Chapter 201 specifies four circumstances where a property transfer will be considered exempt from the tax.[7] There is no exemption for "book transactions" which convey an interest in real property by deed among related entities.
In the absence of a specific legislative directive authorizing an exemption, we believe a straightforward application of Section 201.02(1) requires application of the *911 tax to the current deed, which conveys real property from a limited partnership to a limited liability company.
In sum, applying the plain language of Section 201.02(1) to the undisputed facts and the face of the deed, we find the trial court properly denied CMC's tax refund claim. The deed conveying real property from the limited partnership to the limited liability company is subject to the documentary stamp tax. Accordingly, the order below is affirmed.
Affirmed.
NOTES
[*] Judge Green did not participate in oral argument.
[1] Crescent Funding's general partner was CRE and its limited partner was Crescent.
[2] CRE is wholly owned by Crescent.
[3] Ordinarily, the state tax rate is $.70 on each $100 of the consideration exchanged for real property or any interest therein. See § 201.02(1), Fla. Stat. (2000). However, Miami-Dade County applies a special state tax rate of $.60 per $100 or portion thereof. See § 201.0205, Fla. Stat. (2000). Miami-Dade County imposes an additional county surtax of $.45 on property other than a single-family residence. See Fla. Admin. Code R. 12B-4.012(3).
[4] Florida Administrative Code Rule 12B-4.013(7) specifies: "There is a presumption that the consideration is equal to the fair market value of the real property interest transferred." We note that agency rules are presumed valid, and that it is not within the province of an appellate court to rewrite those rules under the guise of construction. See State v. Jenkins, 469 So.2d 733 (Fla.1985); White v. Moore, 789 So.2d 1118 (Fla. 1st DCA 2001); St. Johns River Water Mgmt. Dist. v. Consolidated-Tomoka Land Co., 717 So.2d 72 (Fla. 1st DCA 1998).
[5] Since Florida's documentary stamp tax statutes are patterned after the former federal documentary stamp tax, see Choctawhatchee Elec. Coop., Inc. v. Green, 132 So.2d 556 (Fla.1961), Florida courts have historically interpreted Florida's documentary stamp tax by reference to federal documentary stamp tax decisions, see State v. Cook, 108 Fla. 157, 146 So. 223 (1933).
[6] CMC acknowledges that the purpose of the transfer was to separate the real property from the rest of Crescent's assets for the purpose of facilitating future unsecured financing. The result effectively transformed CMC into a viable entity owning property. We note that as a limited liability company, CMC insulates its owner, Crescent Funding, from liability. See Kanov v. Bitz, 660 So.2d 1165 (Fla. 3d DCA 1995); Seminole Boatyard, Inc. v. Christoph, 715 So.2d 987 (Fla. 4th DCA 1998). We are also mindful of the fact that in situations where a limited liability company merges with any other business entity, recordation of deeds and payment of documentary stamp taxes are not required in order to transfer title to real property pursuant to such a merger. See §§ 607.1101, 608.4383(2), and 620.204(1)(b), Fla. Stat. (2002).
[7] Section 201.02(6), Florida Statutes (2000), exempts property transferred to tax exempt entities. Section 201.02(7), Florida Statutes (2000), exempts property transferred in the course of a dissolution of marriage. Section 201.24(1), Florida Statutes (2000), exempts obligations to pay money issued by a Florida municipality, political subdivision, or agency. Finally, Section 201.24(2), Florida Statutes (2000), exempts transactions involving lease or rental of educational facilities and sites.